**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | |
|---|---|
| **EVEREST NATIONAL INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. _____** |
| ) | |
| **ROBERT PIRAINO, MUSIC CITY FENCING CLUB, INC., JANE DOE, a minor, and JOHN DOE, her father, and JUDY DOE, her mother,** ) | |
| ) | |
| **Defendants.** ) | |

## EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

Everest National Insurance Company ("Everest"), for its Complaint for Declaratory

Judgment against Robert Piraino ("Piraino"), Music City Fencing, Inc. ("Music City

Fencing"), and Jane Doe, John Doe, and Judy Doe, the anonymous plaintiffs in the

lawsuit, *Jane Doe, a minor, et al., v. Robert Piraino, et al.*, Case No. 3:22-cv-00560, in

the U.S. District Court for the Middle District of Tennessee ("Underlying Lawsuit") states

as follows:

## NATURE OF ACTION

1.     Everest seeks a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that

it is not obligated to defend of indemnify Piraino or Music City Fencing in connection with

the Underlying Lawsuit, brought by John and Judy Doe, the parents of minor, Jane Doe,

who was sexually exploited and molested by Piraino, the owner and principle of Music

City Fencing, a Nashville fencing gym where Jane Doe took classes.

1

2. Piraino has been convicted of sexually exploiting Jane Doe, and is currently serving a twenty-five-year prison sentence; his business, Music City Fencing, has been shuttered.

3. The insurance policies at issue are primary and excess general liability policies Everest issued to the United States Fencing Association ("USAF"), the national governing body for the sport of fencing in the United States (collectively, the "Policies"). Under an endorsement to the Policies, fencing clubs enrolled as participating USAF member clubs, and their individual members, may also qualify as Named Insureds under the Policies, but only with regard to losses arising from their organized and supervised club practices and fencing related activities.

4. The Policies include limited coverage for liability arising out of incidents of abuse and molestation, but this coverage does not apply to individuals who participated in the alleged abuse or any other insureds that knowingly allowed the actual or alleged abuse, nor does the coverage apply to any damages arising out of the acts, errors or omissions of an executive person after that executive person had knowledge of any actual or alleged abuse.

5. Everest seeks a declaration that there is no coverage for Piraino or Music City Fencing in connection with the Underlying Lawsuit because (a) Piraino and Music City Fencing do not qualify as insureds since the alleged injuries arise out of sexual exploitation and abuse, and not out of any USAF organized, supervised fencing activities or tournament participation; and (b) even if they otherwise qualify as insureds, there is no coverage for Piraino due to his alleged role as Jane Doe's abuser, and there is no coverage for Music City Fencing because, Piraino, acting for and on behalf of Music City

2

Fencing as its sole owner and operator, had knowledge of and knowingly allowed his own acts of abuse and exploitation.

## THE PARTIES

6.    Everest is a Delaware corporation with its principal place of business in Warren, New Jersey.

7.    Robert Piraino is a Tennessee resident, who is currently incarcerated at the Trousdale Turner Correctional Facility in Hartsville, Tennessee 37074, where he is serving a twenty-five-year prison sentence.

8.    Music City Fencing is a Tennessee corporation; its last-known principal place of business was in Nashville, Tennessee.

9.    Jane Doe, a minor, is a resident of Davidson County, Tennessee.  The Complaint in the Underlying Lawsuit ("Underlying Complaint"), attached hereto as Exhibit 1, was filed by and on behalf of Jane Doe under a pseudonym "because the sexual abuse committed against her by Defendant Piraino is a highly personal and sensitive subject." *See* Ex. 1 at 1.  Jane Doe is anonymously named in this action in the interest of maintaining the privacy protection requested in Underlying Complaint.

10.    John Doe is a resident of Davidson County, Tennessee.  The Underlying Lawsuit was filed by John Doe as the parent and next friend of Jane Doe, under a pseudonym "because the sexual abuse committed against [Jane Doe] by Defendant Piraino is a highly personal and sensitive subject."  *See* Ex. 1 at 1. John Doe is anonymously named in this action in the interest of maintaining the privacy protection requested in Underlying Complaint.

11.     Judy Doe is a resident of Davidson County, Tennessee.  The Underlying Lawsuit was filed by Judy Doe as the parent and next friend of Jane Doe, under a pseudonym "because the sexual abuse committed against her by Defendant Piraino is a highly personal and sensitive subject."  *See* Ex. 1 at 1.  Judy Doe is anonymously named in this action in the interest of maintaining the privacy protection requested in Underlying Complaint.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202 insofar as Everest seeks a declaration of rights and duties under the insurance policies issued to USAF under which Piraino and Music City Fencing are potentially also Named Insureds.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as diversity exists between the plaintiff, Everest, and all the defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     There is a present and actual controversy between the parties.

14.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because the Underlying Lawsuit that is the subject of this action is pending in this judicial district, and the injuries that are the subject of the Underlying Lawsuit are alleged to have occurred in this judicial district.

## FACTUAL BACKGROUND

A.     **Piraino and Music City Fencing**

15.     Piraino began doing business in Nashville, Tennessee as a fencing gym and instruction facility called "Music City Fencing" in or around 2013 or 2014.

16.     In 2017, Piraino filed articles of incorporation with the Tennessee Secretary of State on behalf of Music City Fencing, Inc., listing himself as registered agent.

17.     From August 2016 until August 2021, Piraino registered annually with USAF as a "professional" or "coach," and registered Music City Fencing as a USAF "member club."

**B.     The Underlying Lawsuit**

18.     On July 27, 2022, John Doe, Judy Doe, and minor, Jane Doe (the "Underlying Plaintiffs"), filed the Underlying Lawsuit, naming Piraino, Music City Fencing, and USAF as defendants.

19.     The Underlying Complaint alleges that, in or around the spring or summer of 2019, Jane Doe was a thirteen-year-old, taking fencing lessons at Music City Fencing, when Piraino began sexually grooming, exploiting, and abusing her.

20.     According to the Underlying Complaint, Piraino established text message communications with Jane Doe, and, after some time, induced her to send him a cell phone photo of herself in a bikini . Ex. 1 at ¶¶ 93-95.

21.     It is alleged that, over the next year and a half, Piraino induced Jane Doe to provide, via cellphone, numerous sexually explicit photos and videos of herself in exchange for gift cards, fencing equipment, and other gifts; Piraino also sometimes allegedly left a cellphone and clothing in the Music City Fencing locker room for Jane Doe to use when posing for sexually explicit photos and videos. Ex. 1 at ¶¶ 96-97; 107-108.

22.     The Underlying Complaint alleges that, in additional to soliciting photos and videos from Jane Doe, Piraino sent her thousands of photographic images and videos, most of which were sexually inappropriate or obscene, including pictures of his genitals,

videos of himself engaged in sex acts with other individuals, allegedly including sex acts with a minor, and videos of himself masturbating.  Ex. 1 at ¶ 101.

23.    When Jane Doe did not comply with Piraino's demands for additional images and videos, Piraino allegedly punished her by singling her out for harsh treatment at fencing practice, including allegedly ordering Jane Doe to perform exercises that aggravated an existing shoulder injury.  Ex. 1 at ¶¶ 114-117.

24.    The Underlying Complaint alleges that, at some point, Piraino also began physically abusing Jane Doe, allegedly insisting on giving her massages at practices and tournaments, during which he would cause her to stand away from where she could be noticed, and fondle Jane Doe while moaning and grunting sexually.  Piraino also allegedly touched Jane Doe inappropriately during fencing lessons under the guise of correcting her fencing technique.  Ex. 1 at ¶ 120.

25.    The Underlying Complaint further alleges that Piraino had a history of inappropriate sexual contact with other Music City Fencing students, including: (a) unlawful sexual contact with a young fencer in June 2016, for which he was allegedly criminally charged; (b) an incident in 2016 or 2017; in which he allegedly grabbed a different young fencer's bottom while at a party, causing her to cry and become visibly upset; and (c) an incident on February 24, 2017, in which he allegedly touched a woman's breast without her consent at a fencing tournament. Ex. 1 at ¶¶ 67-68, 75.

26.    The Underlying Complaint identifies Piraino as "the sole owner, officer and director of Music City Fencing."  Ex. 1 at ¶ 4.

27.    The Underlying Complaint alleges that Piraino "was responsible for the management of the company and made all decisions relating to the finances, personnel,

leases, equipment, acquisitions, and policies and procedures governing the company's day-to-day operations, including the adoption, implementation, and enforcement of the company's policies and procedures relating the prevention and detection of sexual abuse." Ex. 1 at ¶ 41.

28.    The Underlying Complaint further alleges that Piraino had "complete control over the operations and management of Music City Fencing." Ex. 1 at ¶ 43.

29.    The Underlying Complaint asserts that Music City Fencing is "vicariously liable for Piraino's conduct because Piraino was an agent of Music City Fencing and was acting within the scope of his authority as an agent of Music City Fencing when he sexually abused Jane Doe." Ex. 1 at ¶ 142.

30.    The Underlying Complaint also alleges that "Piraino's knowledge of his own behavior is legally imputed to Music City Fencing as an agent of the company." Ex 1 at ¶ 208.

31.    The Underlying Complaint asserts causes of action against Piraino and Music City Fencing for intentional infliction of emotional distress; assault and battery; violation of Section 1591(a) of the Trafficking Victims Protection Act ("TVPA") (18 U.S.C. § 1591); violation of Section 1589 of the TVPA (18 U.S.C. § 1589); and violation of the Child Sexual Abuse and Pornography Act (18 U.S.C. § 2251, et. seq.). The Underlying Complaint also asserts causes of against Music City Fencing for negligence and negligence infliction of emotional distress.

32.    It is alleged in the Underlying Complaint that, as a result of the sexual exploitation and abuse, Jane Doe suffered serious and severe mental and emotional injuries, including anxiety, depression, stress, grief, humiliation, and loss of innocence, as

7


EV Music City Fencing Comp DJ 230502

Case 3:23-cv-00442   Document 1   Filed 05/03/23   Page 7 of 34 PageID #: 7

well as injuries to her shoulder. Jane Doe's parents also allegedly suffered emotional injuries as well as economic losses for Jane Doe's treatment.

33. After learning of the Underlying Lawsuit through a tender by Named Insured, USAF, Everest contacted Piraino and Music City Fencing by letter, and advised that Everest would defend in the Underlying Lawsuit subject to a full and complete reservation of rights, including the right to withdraw the defense and seek declaratory relief.[1] A copy of Everests' position letter to Piraino and Music City Fencing, dated February 10, 2023, is attached hereto as Exhibit 2.

**C. The Criminal Cases Against Piraino**

34. According to the Underlying Complaint, after Jane Doe reported Piraino's abuse to a therapist in August 2021, criminal charges were filed against him by the District Attorney for Davidson County, Tennessee, in an action captioned *State of Tennessee v. Robert Piraino*, Case No. 2022-A-135. Ex. 1 at ¶ 134.

35. The Underlying Complaint alleges that Piraino was also charged by the District Attorney for Davidson County, Tennessee, in connection with a June 2016, incident of alleged sexual battery of a teenage boy who was taking lessons at Music City Fencing, in an action captioned *State of Tennessee v. Robert Piraino*, Case No. 2022-B-1214. Ex. 1 at ¶ 67.

36. On November 16, 2022, the Davidson County Criminal Court entered judgment against Piraino after he pled guilty to three counts of sexual exploitation of Jane Doe in the criminal Case No. 2022-A-135, and pled guilty (no contest) to one count of

---

[1] Everest has also undertaken the defense of USAF subject to a reservation of rights. USAF's right to coverage in connection with the Underlying Lawsuit is not at issue in this action.

sexual battery of a minor in the criminal Case No. 2022-B-1214. Copies of the judgments in Case Nos. 2022-A-135 and 2022-B-1214 are attached as Exhibit 3.

## THE EVEREST POLICIES

**A.    The Primary Policies**

37.    Everest issued to USAF Package Liability Policy no. SI8ML01564181, effective August 1, 2018 to August 1, 2019 (the "2018-19 Primary Policy"), and Package Liability Policy no. SI8ML01564191, effective August 1, 2019 to August 1, 2020 (the "2019-20 Primary Policy") (collectively, the "Primary Policies"). Copies of the Primary Policies are attached hereto as Exhibits 4 and 5.

38.    The Primary Policies include a Commercial General Liability Coverage Part ("CGL Coverage Part").

39.    The Insuring Agreement to the Primary Policies' CGL Coverage Part provides, in relevant part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

****

40.    The Primary Policies contain an endorsement, titled, "Named Insured Extension

Endorsement (Broad Form)" (the "Named Insured Endorsement").

EV Music City Fencing Comp DJ 230502

41.     Under the Named Insured Endorsement, the Primary Policies' Declarations Page is amended to include the organization named in the Schedule; in relevant part, the Schedule provides:

> Named Insured(s):
>
> UNITED STATES FENCING ASSOCIATION DBA USA FENCING (USAF) "USAF PARTICIPATING MEMBER CLUBS (DEFINED AS THOSE THAT HAVE 100% INDIVIDUAL MEMBERSHIP IN USAF. CLUBS THAT DO NOT HAVE 100% INDIVIDUAL MEMBERSHIP ARE DEFINED AS AFFILIATED CLUBS AND AFFORDED NO COVERAGE UNDER THIS POLICY) AND THEIR MEMBERS, BUT ONLY WITH REGARD TO LOSSES ARISING FROM THEIR ORGANIZED, SUPERVISED CLUB PRACTICES AND FENCING RELATED ACTIVITIES AND FROM THEIR PARTICIPATION IN USAF AND/OR FEDERATION INTERNATIONAL D'ESCRIME (FIE) SANCTIONED COMPETITIONS. "COMPETITIONS" INVOLVING THREE OR FEWER CLUBS WILL BE CONSIDERED PRACTICES. WITH REGARDS TO CAMPS, CLINICS, TOURNAMENTS, MEMBER CLUBS AND PROFESSIONAL MEMBERS ARE ONLY COVERED WHEN 100% OF THE PARTICIPANTS ARE INDIVIDUAL MEMBERS OF USAF."
>
> ****

42.     The Primary Policies contain an endorsement, titled, "Limited Abuse or Molestation Coverage (Sublimit)" ("Abuse or Molestation Coverage Endorsement").

43.     The Abuse or Molestation Coverage Endorsement amends the Primary Policies' CGL Coverage Part to include the following exclusion:

> This insurance does not apply to:
>
> 1. 'Bodily injury', 'property damage' or 'personal and advertising injury' to which any insured may be held liable by reason of the actual, alleged or threatened abuse or molestation of any person by any person, persons or organizations; or
>
> 2. 'Bodily injury,' 'property damage' or 'personal and advertising injury' for which any insured may be held liable by reason of:
>
>     a.  The employment of;

10

b. Training of;

c. The investigation of;

d. The supervision of;

e. The reporting or failure to report to the proper authorities of;

f. The retention or reassignment of; or

g. Any other alleged or actual relationship, contract, agreement or activity with any person, persons or organization:

    i. Accused or guilty of; or

    ii. Who had or should have had actual, implied or imputed knowledge of the actual, alleged or threatened abuse or molestation of any person.

<div align="center">****</div>

44. The Abuse or Molestation Coverage Endorsement further amends the CGL Coverage Part to add an Insuring Agreement for Abuse or Molestation Coverage, which provides, in relevant part, as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "abuse or molestation injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "abuse or molestation injury" to which this insurance does not apply. We may, at our discretion, investigate any "abuse or molestation incident" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

<div align="center">11</div>

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "abuse or molestation injury" only if:

(1) The "abuse or molestation injury" is caused by an "abuse or molestation incident" that takes place in the "coverage territory";

(2) The first act of an "abuse or molestation incident" takes place during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "abuse or molestation incident" or claim, knew that the "abuse or molestation injury" had taken place, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "abuse or molestation injury" had taken place, then any continuation, change or resumption of such "abuse or molestation injury" during or after the policy period will be deemed to have been known prior to the policy period.

****

45. The Abuse or Molestation Coverage Endorsement amends the CGL Coverage Part, in relevant part, to add the following provision to Section II – Who is Insured:

C. For purposes of the coverage provided by this endorsement, none of the following is an insured:

a. The Named Insured shown in the Declarations, and any other person or organization qualifying as an insured under this policy, who participated in, knowingly allowed or directed an "abuse or molestation incident".

****

46. The Abuse or Molestation Coverage Endorsement amends the CGL Coverage Part to add certain exclusions, under which the coverage provided by the

12

Abuse or Molestation Coverage Endorsement does not apply. These exclusions provide as follows:

> The insurance provided under this endorsement does not apply to:
>
> 1. Bodily Injury, Property Damage, Or Personal And Advertising Injury
>
>     a. "Bodily injury", other than "abuse or molestation injury" to which this insurance applies;
>
>     b. "Property damage"; or
>
>     c. "Personal and advertising injury".
>
> 2. Punitive Or Exemplary Damages
>
>     Any sum awarded for punitive damages, exemplary damages, multiplied damages, fines or penalties arising out of any "abuse or molestation incident".
>
> 3. Prior Insurance Or Prior Condition
>
>     "Abuse or molestation injury":
>
>     a. For which insurance is afforded under any policy with a policy period that began prior to the beginning of the policy period for this insurance, or
>
>     b. That results from an "abuse or molestation incident" that first commenced prior to the beginning of the policy period for this insurance.
>
> 4. Executive Person
>
>     Damages arising out acts, errors or omissions of an "executive person" in connection with an "abuse or molestation incident", but only with respect to acts, errors or omissions that take place after the "executive person" becomes aware of the "abuse or molestation incident".

****

47.     Under the Abuse or Molestation Endorsement, the following definitions are added to the Definitions Section of the Primary Policies' CGL Coverage Part:

1. "Abuse or molestation" means:

   a. Actual, threatened or alleged:

      (1) Assault;

      (2) Battery;

      (3) Sexual abuse; or

      (4) Molestation;

      that results in "bodily injury"; and

   b. The negligent:

      (1) Employment;

      (2) Training;

      (3) Investigation;

      (4) Supervision;

      (5) Reporting to the proper authorities, or failure to so report; or

      (6) Retention

      of a person for whom any insured is legally responsible and whose conduct involves the actual, threatened or alleged assault, battery, sexual abuse or molestation described in Paragraph 1.a. above."

2. "Abuse or molestation incident" means an act or multiple, continuous or repeated acts of "abuse or molestation" by one person or two or more persons acting together and breaches of duty giving rise to such acts. All acts of "abuse or molestation" and breaches of duty giving rise to such acts by any one person, or two or more persons acting together will be deemed as one incident. The "abuse or molestation incident" will be deemed to occur when the first "abuse or molestation incident" takes place during the policy period. Regardless of:

   a. The number of persons injured;

   b. The time period over which the "abuse or molestation injury" took place; or

14

      c.  The number of such acts;

all "abuse or molestation incidents" by one person, or two or more persons acting together will be considered one "abuse or molestation incident".

3. "Abuse or molestation injury" means bodily injury, sickness, disease, mental injury, mental anguish, sock or fright sustained by a person, including death resulting from any of these at any time, as a result of an "abuse or molestation incident".

4. "Executive person," means:

      a.  You and your spouse, if you are designated in the Declarations as an individual;

      b.  Your members, your partners, and their spouses, if you are designated in the Declarations as a partnership or joint venture;

      c.  Your members and managers, if you are designated in the Declarations a limited liability company;

      d.  Your trustees, if you are designated in the Declarations as a trust;

      e.  Your "executive officers", directors, and managerial employees, if you are designated in the Declarations as an organization other than a partnership, joint venture, limited liability company, or trust.

<div align="center">****</div>

**B.    THE EXCESS POLICIES**

48.    Everest issued to USAF Excess Liability Policy no. SI8EX00971181, effective August 1, 2018 to August 1, 2019 (the "2018-19 Excess Policy") and Excess Liability Policy no. SI8EX00971191, effective August 1, 2019 to August 1, 2020 (the "2019-20 Excess Policy") (collectively, the "Excess Policies"). Copies of the Excess Policies are attached hereto as Exhibits 6 and 7.

<div align="center">15</div>

49.     Under the Excess Policies, Everest will pay on behalf of the insured the amount of "ultimate net loss" in excess of the "underlying limits of insurance" to which the Excess Policies apply.

50.     The Insuring Agreement to the Excess Policies states that the coverage provided by the Excess Policies will: (a) follow the terms, conditions and exclusions that are contained in the "first underlying insurance," unless otherwise directed by the Excess Policies' terms, including any attached endorsements; and (b) be no broader than that provided by the "first underlying insurance."

51.     For the 2018-19 Excess Policy, the Schedule of Underlying Insurance identifies the 2018-19 Primary Policy as the "first underlying insurance;" for the 2019-20 Excess Policy, the Schedule of Underlying Insurance identifies the 2019-20 Primary Policy as the "first underlying insurance."

52.     The Excess Policies contain the following relevant definitions:

3.  "First underlying insurance" means the policy listed in the Declarations under the schedule of "underlying insurance" as the "first underlying insurance".

****

15. "Underlying insurance" means the "first underlying insurance", any self-insured retention and any policies of insurance listed in the Declarations under the schedule of "underlying insurance". "Underlying insurance" will include any renewal or replacement of such policies and any "other insurance" available to you.

16. "Underlying limits of insurance" means the total sum of the limits of all applicable "underlying insurance" listed under this policy's Declarations.

17. "Underlying insurer" means any insurer who provides any policy of insurance listed in the schedule of "underlying insurance".

16

18. "Ultimate net loss" means the total sum, after the reduction for recoveries, salvages collectible and "other insurance", that the insured becomes legally obligated to pay as damages under this policy by reason of settlements, judgments, arbitration or other alternate dispute method entered into with our consent or the "underling insurer's" consent.

<div align="center">****</div>

<div align="center">

## <u>COUNT I – DECLARATORY JUDGMENT</u>

**THERE IS NO COVERAGE FOR PIRAINO AND MUSIC CITY FENCING BECAUSE THEY DO NOT QUALIFY AS NAMED INSUREDS UNDER THE NAMED INSURED ENDORSEMENT**

</div>

53.     Everest repeats and incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

54.     The Primary and Excess Policies potentially provide coverage only to an Insured.

55.     The Primary and Excess Policies were issued to USAF, and USAF is the Named Insured identified in the Policies' Declarations.

56.     Under the Primary Policies' Named Insured Endorsement, Participating Member Clubs and their members are added to the Declarations as Named Insureds, but "only with regard to losses arising from their organized, supervised club practices and fencing related activities and from their participation in USAF and/or Federation International D'Escrime sanctioned competitions . . . ."

57.     The Underlying Lawsuit seeks to impose liability on Piraino and Music City Fencing for losses arising from Piraino's alleged sexual abuse and exploitation of Jane Doe, a thirteen-year-old minor, who allegedly took fencing lessons at Music City Fencing.

<div align="center">17</div>

58.     The Underlying Complaint alleges that, over a period of more than a year and a half, Piraino exchanged sexually explicit messages and videos with Jane Doe via cell phone,  allegedly inducing Jane Doe to provide him with sexually explicit photos and videos of herself by grooming her and plying her with gifts.

59.     The Underlying Complaint alleges that Piraino also sent Jane Doe sexually explicit messages, images, and videos, including videos where he engaged in sex acts with other individuals, allegedly including another minor, and videos of himself intoxicated and masturbating.

60.     The Underlying Complaint alleges that Piraino distributed naked photos of Jane Doe online, including providing images of Jane Doe to a known purveyor of child pornography, who allegedly further distributed the images.

61.     The Underlying Complaint alleges that Piraino used fencing practices at Music City Fencing to single out and punish Jane Doe when she refused his demands to provide additional sexual images and videos, including by directing her to perform exercises that he knew would be painful due to an existing shoulder injury.

62.     The Underlying Complaint alleges that, on some occasions, Piraino left a cell phone and clothing in the Music City Fencing locker room with the understanding that Jane Doe would go into the locker room, photograph herself in the clothing, and leave the cell phone for Piraino to retrieve.

63.     The Underlying Complaint that Piraino had a foot fetish, and purchased socks for Jane Doe to wear and return to him, and then used to socks as masturbation tools in videos he sent to Jane Doe.

EV Music City Fencing Comp DJ 230502

64.     The Underlying Complaint alleges that, at some point, Piraino began to touch Jane Doe inappropriately at practices and tournaments, allegedly insisting on giving Jane Doe massages in area of the gym that were far enough away to avoid being noticed, or in separate rooms, during which he allegedly grunted and moaned sexually.

65.     The Underlying Complaint also alleges that Piraino spoke explicitly to Jane Doe about his plans to bring her to his apartment and have sex with her when she turned sixteen.

66.     The Underlying Complaint alleges that, as a result of Piraino's sexually exploitive and abusive conduct, Jane Doe suffered serious and severe mental and emotional injuries, including anxiety, depression, grief, stress, humiliation, and loss of innocence, as well as injuries to her shoulder.

67.     USAF mandates that all Participating Member Clubs must comply with SafeSport guidelines, including sexual abuse prevention and reporting policies.

68.     The Underlying Complaint further alleges that, within Music City Fencing, the "only person tasked with ensuring that Piraino and the other coaches at Music City Fencing followed [USAF SafeSport abuse reporting and prevention policies] was Piraino." Ex. 1 at ¶ 72.

69.     The Underlying Complaint alleges that Music City Fencing is vicariously liable for Piraino's conduct, and that Piraino's behavior is "legally imputable" to Music City Fencing.  Ex. 1 at ¶ 208.

70.     Based on the allegations in the Underlying Complaint, Piraino's and Music City Fencing's liability for loss in the Underlying Lawsuit arises out of Piraino's sexually predatory acts of exploiting and molesting a child, and not out of participation in USAF

organized, supervised club practices and fencing related activities or USAF and/or Federation International D'Escrime sanctioned competitions.

71.     Because Piraino's and Music City Fencing's liability for loss in the Underlying Lawsuit does not potentially arise out of Jane Doe's participation in USAF organized, supervised club practices and fencing related activities or USAF and/or Federation International D'Escrime sanctioned competitions, Piraino and Music City Fencing do not qualify as Named Insureds with respect to the Underlying Lawsuit. Piraino and Music City Fencing, therefore, have no right to a defense or indemnity in connection with the Underlying Lawsuit.

**WHEREFORE**, Everest respectfully requests the Court enter judgment declaring:

(a) that Everest has no duty to defend or indemnify Piraino and Music City Fencing in connection with the Underlying Lawsuit; and

(b) awarding any and all other relief to which Everest may be entitled.

## COUNT II - DECLARATORY JUDGMENT
### DUE TO THE ALLEGATIONS OF INJURY RESULTING FROM ABUSE OR MOLESTATION, THE CGL COVERAGE PART DOES NOT APPLY

72.     Everest repeats and incorporates by reference paragraphs 1 through 71 as though fully set forth herein.

73.     The Primary Policies contain a CGL Coverage Part, which potentially provides coverage for those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage," that is caused by an "occurrence" taking place during the policy period, or for "personal and advertising injury" that is caused by an offense arising out of the insured's business .

20

74.    As amended by the Abuse or Molestation Coverage Endorsement, the insurance provided under the CGL Coverage Part for "bodily injury," "property damage," or "personal and advertising injury" does not apply to injury for which any insured may be held liable by reason of the actual, alleged, or threatened abuse or molestation of any person, by any person or organizations, or by reason of the employment, training, investigation, supervision, failure to report, retention of, or any other alleged or actual relationship with any person, persons, or organization, accused or guilty of, or who should have had actual, implied or imputed knowledge of the actual, alleged or threatened abuse or molestation of any person.

75.    The Underlying Complaint seeks to impose liability based on allegations that Jane Doe was subjected to and suffered injury as a result of sexual abuse, molestation and exploitation.

76.    Because the Lawsuit involves liability for injury by reason of actual or alleged abuse or molestation of a person, coverage for "bodily injury," "property damage" and "personal and advertising injury" under the CGL Coverage Part in the Primary Policies does not apply.  There is, therefore, no coverage for the Lawsuit under the Primary Policies' CGL Coverage Part.

**WHEREFORE**, Everest respectfully requests the Court enter judgment declaring:

(a) that there is no coverage for the Underlying Lawsuit under the CGL Coverage Part to the Primary Policies; and

(b) awarding any and all other relief to which Everest may be entitled.

## COUNT III - DECLARATORY JUDGMENT

**BECAUSE THE LAWSUIT ALLEGES ABUSE OR MOLESTATION INJURY, THERE IS NO COVERAGE UNLESS THE ABUSE OR MOLESTATION COVERAGE ENDORSEMENT APPLIES**

77.     Everest repeats and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

78.     The Abuse or Molestation Coverage Endorsement amends the Primary Policies' CGL Coverage Part to include an Abuse or Molestation Insuring Agreement, under which Everest will pay those sums that the insured becomes legally obligated to pay as damages because of "abuse or molestation injury" to which the Abuse or Molestation Coverage Endorsement applies.

79.     As defined by the Abuse or Molestation Coverage Endorsement, "abuse or molestation injury" means, in relevant part, the "actual, threatened or alleged assault, battery, sexual abuse, or molestation of any person that results in 'bodily injury,' or the negligent employment, training, investigation, supervision or retention, or failure to report any person whose conduct involves the actual, threatened or alleged assault, battery, sexual abuse or molestation of any person."

80.     The Abuse or Molestation Coverage Endorsement contains Exclusion 1, "Bodily Injury, Property Damage, or Personal and Advertising Injury," under which the insurance provided by the Abuse or Molestation Coverage Endorsement does not apply to "bodily injury" other than "abuse or molestation injury," or to "property damage" or "personal and advertising injury."

81.     The Underlying Complaint seeks to impose liability based on allegations that Jane Doe was subjected to and suffered mental, emotional and physical injuries as

22

a result of sexual abuse, molestation and exploitation. The Underlying Complaint, therefore, alleges "abuse or molestation injury."

82. Since the Underlying Complaint seeks to impose liability for "abuse or molestation injury," Exclusion 1, "Bodily Injury, Property Damage, or Personal and Advertising Injury," applies. Accordingly, with respect to the Underlying Lawsuit, there is no coverage for "bodily injury" other than "abuse or molestation injury," and no coverage for "property damage" or "personal and advertising injury."

83. The coverage applicable to "abuse or molestation injury" under Abuse or Molestation Coverage Endorsement is, therefore, the only coverage potentially available to Music City Fencing and Piraino under the Primary Policies, and no other coverage parts potentially apply.

**WHEREFORE**, Everest respectfully requests the Court enter judgment declaring:

(a) that there is no coverage for the Underlying Lawsuit under the Primary Policies other than the coverage for "abuse or molestation injury" provided subject to the terms of the Abuse or Molestation Coverage Endorsement; and

(b) awarding any and all other relief to which Everest may be entitled.

## COUNT IV - DECLARATORY JUDGMENT
### THERE IS NO COVERAGE FOR PIRAINO BECAUSE THE PERPETRATOR OF AN ABUSE OR MOLESTATION INCIDENT IS NOT AN INSURED

84. Everest repeats and incorporates by reference paragraphs 1 through 83 as though fully set forth herein.

85. The Abuse or Molestation Coverage Endorsement potentially provides coverage, in relevant part, for those sums the Insured becomes legally obligated to pay

23

as damages because of "abuse or molestation injury" to which the Abuse or Molestation Coverage Endorsement applies that is caused by an "abuse or molestation incident."

86.     Under the Abuse or Molestation Coverage Endorsement, coverage potentially applies only to entities qualifying as Insureds.

87.     As amended by the Abuse or Molestation Coverage Endorsement, any Named Insured or other person or organization otherwise qualifying as an insured "who participated in, knowingly allowed or directed an 'abuse or molestation incident'" is not an Insured.

88.     The term "abuse or molestation incident" is defined, in relevant part as: "an act or multiple, continuous or repeated acts of 'abuse or molestation' by one person or two or more persons acting together and breaches of duty giving rise to such acts . . . ."

89.     The term "abuse or molestation" is defined, in relevant part, as: "actual, threatened or alleged: (1) assault; (2) battery; (3) sexual abuse; or (4) molestation; that results in "bodily injury."

90.     The Underlying Complaint alleges the Piraino sexually abused, molested, and sexually exploited Jane Doe, and that she suffered mental, emotional, and physical injuries as a result.

91.     Piraino has also been convicted of aggravated sexual exploitation in Davidson County Criminal Case No. 2022-A-125, which the Underlying Complaint identifies as a criminal action involving Piraino's abuse of Jane Doe.

92.     As demonstrated by the allegations of sexual exploitation and abuse in the Underlying Complaint and Piraino's conviction for sexual battery of Jane Doe in Criminal

Case No. 2022-A-135, Piraino participated and/or directed an "abuse or molestation incident."

93.    As a participant in and/or director of the "abuse or molestation incident" alleged in the Underlying Complaint, Piraino is not an Insured under the Abuse and Molestation Coverage Endorsement.  Everest, therefore, owes no obligation to defend or indemnify Piraino in connection with the Underlying Lawsuit.

**WHEREFORE**, Everest respectfully requests the Court enter judgment declaring:

(a) that Everest has no duty to defend or indemnify Piraino in connection with the Underlying Lawsuit; and

(b) awarding any and all other relief to which Everest may be entitled.

## <u>COUNT V - DECLARATORY JUDGMENT</u>
**THERE IS NO COVERAGE FOR MUSIC CITY FENCING BECAUSE AN ENTITY THAT KNOWINGLY ALLOWS AN ABUSE OR MOLESTATION INCIDENT IS NOT AN INSURED**

94.    Everest repeats and incorporates by reference paragraphs 1 through 93 as though fully set forth herein.

95.    The Abuse or Molestation Coverage Endorsement potentially provides coverage, in relevant part, for those sums the Insured becomes legally obligated to pay as damages because of "abuse or molestation injury" to which the Abuse or Molestation Coverage Endorsement applies, that is caused by an "abuse or molestation incident."

96.    Under the Abuse or Molestation Coverage Endorsement, coverage potentially applies only to entities qualifying as Insureds.

97.    As amended by the Abuse or Molestation Coverage Endorsement, any Named Insured or other person or organization otherwise qualifying as an Insured that

"participated in, knowingly allowed or directed an 'abuse or molestation incident'" is not an Insured.

98. The term "abuse or molestation incident" is defined, in relevant part as: "an act or multiple, continuous or repeated acts of 'abuse or molestation' by one person or two or more persons acting together and breaches of duty giving rise to such acts."

99. The term "abuse or molestation" is defined, in relevant part, as: "actual, threatened or alleged: (1) assault; (2) battery; (3) sexual abuse; or (4) molestation; that results in "bodily injury," and "the negligent (1) employment; (2) training; (3) investigation; (4) supervision; (5) reporting to proper authorities; or (6) retention of a person for whom any insured is legally responsible and whose conduct involves the actual, threatened or alleged assault, battery, sexual abuse or molestation . . . ."

100. The Underlying Complaint alleges the Piraino sexually abused, molested, and sexually exploited Jane Doe, and that she suffered mental, emotional, and physical injuries as a result.

101. As demonstrated by the allegations of sexual exploitation and abuse in the Underlying Complaint and Piraino's conviction for sexual battery of Jane Doe in Criminal Case No. 2022-A-135, Piraino participated and/or directed an "abuse or molestation incident."

102. The Underlying Complaint alleges that, at all times during which he sexually abused and exploited Jane Doe, Piraino was the "sole owner, officer and director of Music City Fencing." Ex. 1 at ¶ 4.

103. The Underlying Complaint alleges that, in his capacity as Music City Fencing's sole owner, officer and director, Piraino was "responsible for the management

26

of [Music City Fencing] and made all decisions relating to [Music City Fencing's] finances, personnel, leases, equipment acquisitions and policies and procedures governing [Music City Fencing's] day-to-day operations, including adoption, implementation, and enforcement of [Music City Fencing's] policies and procedures related to the prevention and detection of sexual abuse." Ex. 1 at ¶ 41.

104.    The Underlying Complaint alleges that Piraino "had complete control over the operations and management of Music City Fencing." It is further alleged that the Piraino was "only person tasked with ensuring Piraino and the other coaches at Music City Fencing followed [USAF SafeSport abuse detection and prevention] policies." Ex. 1 at ¶¶ 43, 71.

105.    The Underlying Complaint alleges that, in addition to exploiting Jane Doe via cell phone messaging, Piraino caused Jane Doe to use the Music City Fencing locker room to put on clothing he left for her and to pose for pictures using a cell phone left in the Music City Fencing locker room.

106.    The Underlying Complaint alleges that Piraino also used Jane Doe's lessons at the Music City Fencing facility as an opportunity to physically molest Jane Doe and to induce or coerce her into providing additional sexually explicit photos of herself.

107.    The Underlying Complaint asserts that Music City Fencing is "vicariously liable for Piraino's conduct because Piraino was an agent of Music City Fencing and was acting within the scope of his authority as an agent of Music City Fencing when he sexually abused Jane Doe." Ex. 1 at ¶ 142.

108.     The Underlying Complaint asserts that "Piraino's knowledge of his own behavior is legally imputed to Music City Fencing as an agent of the company."  Ex. 1 at ¶ 208.

109.     As demonstrated by allegations in the Underlying Complaint, which identifies Piraino as the sole owner of Music City Fencing, with allegedly complete control over the management of Music City Fencing's day-to-day operations, including personnel decisions and enforcement of sexual abuse detection and prevention policies, Piraino, acting for and on behalf of Music City Fencing as its sole owner and operator, knowingly allowed his own abuse and exploitation of Jane Doe.

110.     Based on Music City Fencing's knowing allowance of sole owner and manager, Piraino's abuse and exploitation of Jane Doe, Music City Fencing is not an Insured under the Abuse and Molestation Coverage Endorsement.  Music City Fencing, therefore, has no right to defense or indemnify in connection with the Underlying Lawsuit.

**WHEREFORE**, Everest respectfully requests the Court enter judgment declaring:

(a) that Everest has no duty to defend or indemnify Music City Fencing in connection with the Underlying Lawsuit; and

(b) awarding any and all other relief to which Everest may be entitled.

## COUNT VI - DECLARATORY JUDGMENT
### COVERAGE FOR PIRAINO AND MUSIC CITY FENCING IS BARRED UNDER THE EXECUTIVE PERSON EXCLUSION

111.     Everest repeats and incorporates by reference paragraphs 1 through 110 as though fully set forth herein.

112.     The Abuse or Molestation Coverage Endorsement contains Exclusion 4. "Executive Person," which states that the coverage provided under the Abuse or

Molestation Coverage Endorsement does not apply to damages arising out of acts, errors or omissions of an "executive person" with respect to acts, errors or omissions that take place after the "executive person" becomes aware of the "abuse or molestation incident."

113.    For organizations other than a partnership, joint venture, limited liability company, or trust, the term "executive person" is defined as "executive officers," directors, and managerial employees; the term "executive officer," means a person holding any of the officer positions created by the entity's charter, constitution, bylaws, or any other similar governing document.

114.    The Underlying Complaint alleges that Piraino was Music City Fencing's "sole owner, officer and director."

115.    The Underlying Complaint alleges that Piraino was "responsible for the management of Music City Fencing and made all decisions relating to Music City Fencing's finances, personnel, leases, equipment acquisitions and policies and procedures governing Music City Fencing's day-to-day operations, including adoption, implementation, and enforcement of Music City Fencing's policies and procedures relating to the prevention and detection of sexual abuse."

116.    As alleged in the Underlying Complaint, Piraino is an "executive person" as that term is defined in the Abuse or Molestation Coverage Endorsement.

117.    The Underlying Complaint asserts claims for damages from Music City Fencing and Piraino in connection with Piraino's sexual abuse and exploitation of Jane Doe; Piraino is alleged to have known of his own misconduct, which allegedly included inducing Jane Doe to take photos of herself using a cellphone and clothing Piraino left for her in the Music City Fencing locker room, and using Jane Doe's lessons at Music City

29

Fencing as an opportunity to physically molest Jane Doe and/or coerce her into providing additional sexually explicit photos of herself.

118.    As demonstrated by the Underlying Complaint's allegations, Piraino knew of his own acts of "abuse and molestation," including his use of the Music City Fencing facility to perpetrate and further his abuse of Jane Doe, and, accordingly, had knowledge, as an "executive person," of the "abuse or molestation incident" alleged in the Underlying Complaint.

119.    Under the Abuse or Molestation Coverage Endorsement's Exclusion 4., "Executive Persons," there is no coverage for Music City Fencing in connection with the Underlying Lawsuit.  Based on Exclusion 4, Everest, therefore, owes no obligation to defend or indemnify Music City Fencing or Piraino in connection with the Underlying Lawsuit.

WHEREFORE, Everest respectfully requests the Court enter judgment declaring:

(a) that Everest has no duty to defend or indemnify Piraino and Music City Fencing in connection with the Underlying Lawsuit; and

(b) awarding any and all other relief to which Everest may be entitled.

## COUNT VII - DECLARATORY JUDGMENT

**COVERAGE FOR PUNITIVE OR EXEMPLARY DAMAGES IS BARRED UNDER THE PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

120.    Everest repeats and incorporates by reference paragraphs 1 through 119 as though fully set forth herein.

121.    The Abuse or Molestation Coverage Endorsement contains Exclusion 2., "Punitive or Exemplary Damages," which states that the coverage provided under the Abuse or Molestation Coverage Endorsement does not apply to any sum awarded for

30

punitive damages, exemplary damages, multiplied damages, fines or penalties arising out of any "abuse or molestation incident."

122. The Underlying Complaint seeks an award of punitive damages, and includes requests for relief based on Piraino's and Music City Fencing's alleged violations of federal statutes under which liquidated damages may be awarded.

123. Under Exclusion 2., Punitive or Exemplary Damages," the Abuse or Molestation Coverage Endorsement does not apply to any sum awarded against Music City Fencing or Piraino for punitive damages, exemplary damages, multiplied damages, fines or penalties arising out of any "abuse or molestation incident."

**WHEREFORE**, Everest respectfully requests the Court enter judgment declaring:

(a) that Everest has no duty to indemnify Music City Fencing or Piraino for punitive damages, exemplary damages, multiplied damages, fines or penalties awarded in the Underlying Lawsuit; and

(b) awarding any and all other relief to which Everest may be entitled.

## COUNT VIII -DECLARATORY JUDGMENT
### THERE IS NO COVERAGE FOR PIRAINO AND MUSIC CITY FENCING UNDER THE EXCESS POLICIES

124. Everest repeats and incorporates by reference paragraphs 1 through 123 as though fully set forth herein.

125. The Excess Policies state that Everest will pay on behalf of the insured the amount of "ultimate net loss" in excess of the "underlying limits of insurance" to which the Excess Policies apply.

126. The Excess Policies' Insuring Agreement states that the coverage provided by the Excess Policies will follow the terms, definitions, conditions and exclusions that are

contained in the "first underlying insurance," unless otherwise directed by the respective policy, including any attached endorsement, and will not be broader than that provided by the "first underlying insurance."

127.    Under the Excess Policies, the term "underlying limits of insurance" is defined as the total sum of the limits of all applicable "underlying insurance" listed under the Excess Policies' Declarations; the term "underlying insurance" is defined, in pertinent part, as: "the 'first underlying insurance,' any self-insured retention and any policies of insurance listed in the Declarations under the schedule of 'underlying insurance.'"  The term "first underlying insurance" is defined as the policy listed in the Declarations under the schedule of "underlying insurance" as the "first underlying insurance."

128.    The Schedule of Underlying Insurance for the 2018-19 Excess Policy lists the 2018-19 Primary Policy as "first underlying insurance."  Accordingly, the 2018-19 Excess Policy follows the terms, definitions, conditions and exclusions contained within the 2018-19 Primary Policy.

129.    The Schedule of Underlying Insurance for the 2019-20 Excess Policy lists the 2019-20 Primary Policy as "first underlying insurance."  Accordingly, the 2019-20 Excess Policy follows the terms, definitions, conditions and exclusions contained within the 2019-20 Primary Policy.

130.    There is no coverage available to Piraino or Music City Fencing under the Excess Policies in connection with the underlying lawsuit because the "underlying limits of insurance" have not exhausted.

131.    Further, since the Excess Policies follow the terms, definitions, conditions and exclusions that are contained in the Primary Policies, and the coverage granted by

32

the Excess Policies is no broader than that provided by the Primary Policies, there is no

coverage Piraino or Music City Fencing under the Excess Policies because the Primary

Policies do not provide coverage to Piraino or Music City Fencing in connection with the

Underlying Lawsuit.

     **WHEREFORE**, Everest respectfully request the Court enter judgment declaring:

    (a) Everest has no duty to defend or indemnify Piraino or Music City Fencing under

        the Excess Policies in connection with the Underlying Lawsuit; and

    (b) any and all other relief to which Everest may be entitled.


               Respectfully submitted,


          /s/ Parks T. Chastain
          **PARKS T. CHASTAIN**
          Registration No. 13744
          DIRECT:  (615) 630-7717
          (615) 256-8787, Ext. 114
          pchastain@bkblaw.com
          **HANNAH J. LEIFEL**
          Registration No. 038632
          DIRECT: (615) 630-7722
          (615) 256-8787, Ext. 152
          hleifel@bkblaw.com

          **BREWER, KRAUSE, BROOKS, CHASTAIN &**
          **MEISNER, PLLC**
          545 Mainstream Drive, Suite 101
          Nashville, TN  37228
          Attorneys  for  Plaintiff,  Everest  National  Insurance
          Company

          - and –

          /s/ Richard H. Nicolaides, Jr.
          **RICHARD H. NICOLAIDES, JR.**
          (*pro hac vice to be filed*)
          rnicolaides@nicolaidesllp.com

**AMY KLIE** (*pro hac vice to be filed*)
aklie@nicolaidesllp.com
**MADISON G. SATTERLY** (*pro hac vice to be filed*)

**NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP**
10 S. Wacker Drive, Suite 2100
Chicago, IL 60606
(312) 585-1400
Attorneys for Plaintiff, Everest National Insurance Company

34