IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT PIRAINO, MUSIC CITY FENCING CLUB, INC., JANE DOE, a minor, JOHN DOE, her father, and JUDY DOE, her mother, <br><br> Defendants. | Case No. 3:23-cv-00442 <br> Judge Aleta A. Trauger |

## MEMORANDUM

Before the court is the Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed by defendants Jane Doe, a minor, and her parents, John Doe and Judy Doe (the "Doe Defendants"). (Doc. No. 21.) As set forth herein, the court finds that it has subject matter jurisdiction over the claims in this case. The Doe Defendants' motion will therefore be denied.

I.     **FACTS AND PROCEDURAL HISTORY**

The Doe Defendants, as plaintiffs, filed suit in this court in July 2022, naming as defendants Robert Piraino, Music City Fencing Club, Inc. ("Music City Fencing"), and USA Fencing.[1] *Doe v. Piraino*, No. 3:22-cv-00560 (M.D. Tenn.) ("Underlying Lawsuit"). As relevant here, the Doe Defendants assert various claims in the Underlying Lawsuit arising from allegations that Piraino sexually abused Jane Doe while she was a minor and he was her fencing coach. Piraino, as a

---

[1] USA Fencing was incorrectly identified in the Underlying Lawsuit as "United States Fencing Association."

fencing coach, was the owner, principal, and former head coach of Music City Fencing. Piraino and Music City Fencing were allegedly members of, and governed by, USA Fencing. The Underlying Lawsuit was initially stayed, pending resolution of the criminal proceedings against Piraino. The stay was lifted in December 2022, after Piraino pleaded guilty to multiple charges relating to his sexual abuse of Jane Doe and was sentenced to 25 years in prison.

The plaintiff in this case, Everest National Insurance Company ("Everest") filed the present Complaint for Declaratory Judgment (the "DJ Complaint") against Piraino, Music City Fencing, and the Doe Defendants, seeking a declaration that it has no duty to defend Piraino and Music City Fencing in the Underlying Lawsuit. It alleges that, after learning of the Underlying Lawsuit through a tender by USA Fencing, Everest advised Piraino and Music City Fencing by letter that it would defend them in the Underlying Lawsuit, subject to a full and complete reservation of rights. (Doc. No. 1 ¶ 33; *see also* Feb. 10, 2023 Letter, Doc. No. 1-2.) Everest's letter expressly notified Piraino that it reserved the right to "seek declaratory relief for the purpose of obtaining a ruling that it is not obligated to defend or indemnify you or Music City [Fencing] in connection with the [Underlying] Lawsuit." (Doc. No. 1-2, at 8.)

The DJ Complaint alleges that Everest issued to USA Fencing two "Primary Policies," the first in effect from August 1, 2018 through August 1, 2019 and the second in effect from August 1, 2019 through August 1, 2020. (Doc. No. 1 ¶ 37.) It also issued two "Excess Policies," in effect the same dates. (*Id.* ¶ 48.) It seeks declarations to the effect that (1) Piraino and Music City Fencing do not qualify as "named insureds" under the Primary Policies or the Excess Policies, because the injuries alleged by Jane Doe in the Underlying Lawsuit did not arise from Piraino's or Music City Fencing's "organized, supervised club practices and fencing related activities and from their participation in [USA Fencing] and/or Federation International D'Escrime sanctioned

competitions"; (2) the Commercial General Liability ("CGL") Parts of the Primary Policies do not apply to injuries "for which any insured may be held liable by reason of the actual, alleged, or threatened abuse or molestation of any person, by any person or organizations" and therefore do not provide coverage for Piraino or Music City Fencing for the injuries alleged in the Underlying Lawsuit; (3) the "Abuse or Molestation Coverage Endorsement" amends the CGL Coverage Parts of the Primary Policies and provides the "only coverage potentially available to Music City Fencing and Piraino under the Primary Policies," but the Abuse or Molestation Coverage Endorsement does not provide coverage for Piraino, because he "participated in" and/or "directed" the alleged "abuse or molestation incident[s]," or for Music City Fencing, because it knowingly allowed its sole owner's abuse and molestation of Jane Doe; (4) coverage for Piraino and Music City Fencing is also barred by the "Executive Person" exclusion contained in the Abuse or Molestation Coverage Endorsement; (5) coverage for punitive damages is barred by the "Punitive or Exemplary Damages" exclusion in the Abuse or Molestation Coverage Endorsement; and (6) the Excess Policies provide coverage that is co-extensive with that provided by the Primary Policies, so they do not provide coverage for Piraino or Music City Fencing for all of the same reasons. (*Id.* ¶¶ 56, 70, 74, 83, 87, 110, 119, 123, 131.)

The Doe Defendants have filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction and supporting Brief (Doc. Nos. 21, 22), arguing that the DJ Complaint does not "raise a justiciable controversy under Article III" of the United States Constitution and should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(1). They allege more specifically that, with regard to Everest's duty to defend Piraino and Music City Fencing, Everest does not allege an actual controversy as to either the Doe Defendants or Piraino and Music City Fencing, because Everest does not allege that any of the defendants has ever disputed Everest's contention that it

has no duty to defendant Piraino and Music City Fencing in the Underlying Lawsuit. (Doc. No. 22, at 1–2.) And they argue that the question of whether Everest has a duty to indemnify Piraino and/or Music City Fencing in the Underlying Lawsuit is not ripe for resolution, because no judgment has been entered against them. In the alternative, they argue that, if the court decides that there is a justiciable controversy between Everest, on the one hand, and Piraino and Music City Fencing, on the other, then the court should dismiss Everest's claims against the Doe Defendants. (*Id.* at 3.) The Doe Defendants take no position on whether the Primary or Excess Policies provide coverage for Piraino or Music City Fencing.[2]

Everest asserts in its Response that both the Supreme Court and the Sixth Circuit have recognized in similar circumstances that the federal district courts have jurisdiction over declaratory judgment actions by insurers seeking resolution of coverage questions raised by parallel proceedings in federal and state court and that such actions are "commonplace, often regarded as the preferred approach, when the insure[r] believes that, based on the allegations in the underlying complaint, there is no potential for coverage under its policy." (Doc. No. 26, at 14.) It argues that the authority on which the Doe Defendants rely, primarily *Safety Specialty Insurance Co. v. Genesee County Board of Commissioners*, 53 F.4th 1014 (6th Cir. 2022), is distinguishable on the facts. It also contends that all of the factors governing ripeness considerations weigh in favor of finding the controversy here ripe.

The Doe Defendants' Reply argues that the facts of this case make it distinguishable from the cases on which Everest relies, because there is no "active coverage dispute in this case," and Everest has failed to establish the existence of a justiciable controversy. (Doc. No. 27, at 3.)

---

[2] Piraino, who is incarcerated, and Music City Fencing, which has been "shuttered" (Doc. No. 1 ¶ 2), have not responded to the DJ Complaint.

## II. LEGAL STANDARDS

The U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. Federal courts cannot issue advisory opinions. *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). Article III's case-or-controversy requirement allows federal courts to resolve concrete disputes but prohibits them from passing "judgments on theoretical disputes that may or may not materialize." *Saginaw Cty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–03 (1998)).

To establish subject matter jurisdiction, a party must show both that it has standing to bring the claim and that the claim is "ripe." *Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022). To have standing, a plaintiff "must allege (1) an injury in fact (2) that [is] traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992)). To establish an injury that the courts can redress, the plaintiff "must show an imminent or actual injury." *STAT Emergency*, 946 F.3d at 954. A plaintiff cannot bring a lawsuit "simply to avoid a 'possible future injury.'" *Id.* at 954–55 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). The "mere risk of future harm" is not an injury sufficient to establish standing. *Safety Specialty Ins. Co*, 53 F.4th at 1020 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021)).

Relatedly, a claim is not "ripe" if it turns on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535, 208 L.Ed.2d 365 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Ripeness separates those matters that are premature because the injury is speculative and may never occur

from those that are appropriate for the court's review." *Safety Specialty*, 53 F.4th at 1020 (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)).

The Declaratory Judgment Act "does not alter these rules or otherwise enable federal courts to deliver 'an expression of opinion' about the validity of laws." *STAT Emergency*, 946 F.3d at 954 (quoting *Muskrat v. United States*, 219 U.S. 346, 362 (1911)). The Act offers only an "alternative remedy—a declaratory judgment—for existing cases or controversies." *Id.* When a party sues for declaratory relief, "he must satisfy the prerequisites of the Declaratory Judgment Act and Article III's standing baseline." *Id.* In particular, the party suing for declaratory relief must show "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The difference between an abstract question and a controversy suitable for judgment is largely one of degree. *Safety Specialty*, 53 F.4th at 1021 (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

### III. ANALYSIS

While a court must have subject matter jurisdiction in order to issue a declaratory judgment, *see* 28 U.S.C. § 2201(a); *STAT Emergency*, 946 F.3d at 954, the existence of subject matter jurisdiction standing alone does not require the court to *exercise* jurisdiction in a declaratory judgment action. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("While the Declaratory Judgment Act provides the district court with jurisdiction over [an action otherwise within its jurisdiction], the court is 'under no compulsion to exercise that jurisdiction.'" (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). In many cases in which insurance companies have sought declarations as to their coverage responsibilities, courts have presumed that such Article III jurisdiction existed and considered only whether to exercise that jurisdiction. Thus, on review, the question before the Sixth Circuit has often been whether the district court

abused its discretion in either exercising or declining to exercise such jurisdiction, in light of the particular circumstances before it. *See, e.g.*, *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 433 (6th Cir. 2018) (holding that the district court did not abuse its discretion in declining to exercise jurisdiction over insurance company's action requesting a declaratory judgment determining its coverage and indemnification obligations); *Travelers Indem. Co. v. Bowling Green Pro. Assocs.*, 495 F.3d 266, 271 (6th Cir. 2007) (holding that the district court abused its discretion in exercising jurisdiction over insurance company's declaratory judgment action); *Allstate Ins. Co. v. Green*, 825 F.2d 1061 (6th Cir. 1987), (holding that no *per se* rule applied to prevent district courts from exercising jurisdiction over declaratory actions by insurers seeking coverage determinations and remanding for the district court to properly exercise that discretion, taking into consideration all of the relevant factors).

Notably, in the present case, the Doe Defendants do not argue that the court should decline to *exercise* existing jurisdiction under Article III; they only argue that the court *lacks* subject matter jurisdiction altogether. Well established Supreme Court and Sixth Circuit precedent largely refutes that contention. As the Sixth Circuit has explained, early declaratory judgment actions involving insurers were often dismissed for lack of jurisdiction, on the grounds that the cases did not present a "justiciable 'case or controversy." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1064 (6th Cir. 1987). In 1937, the Supreme Court "repudiated this theory," holding that "antagonistic assertions regarding liability for benefits were properly encompassed within the Declaratory Judgment Act." *Id.* (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227 (1937)). In *Haworth*, the insurance company sued its insured for a declaration as to whether the insured was entitled to recover disability benefits he claimed under policies issued by the insurance company. The Court had little difficulty determining that an actual controversy existed in that situation. *See Haworth*,

300 U.S. at 243 ("If the insured had brought suit to recover the disability benefits currently payable under two of the policies there would have been no question that the controversy was of a justiciable nature . . . . But the character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer. . . . It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative.").

After *Haworth*, courts continued to decline jurisdiction over declaratory judgment actions "involving an injured third party since, normally, no cause of action against the insurance company accrues in favor of such party prior to judgment in the state proceeding." *Green*, 825 F.2d at 1064. But the Supreme Court settled that issue in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941). There, the Court held, in a declaratory action brought by an insurance company against both the insured and the injured third party for a declaration of noncoverage, that the injured third party cannot successfully contend that no "controversy" exists between himself and the insurer. *Id.* at 274.[3] As implied above, Sixth Circuit cases since then have largely presumed that subject matter jurisdiction exists in such cases and addressed only whether the district court abused its discretion in exercising (or declining to exercise) such jurisdiction, based on examination of the particular facts of the case in light of the factors the Sixth Circuit has identified as relevant to that determination. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (enumerating the factors).

---

[3] As the Sixth Circuit noted in *Green*, the Supreme Court's holding in *Maryland Casualty* "undeniably recognize[d] the fact that, in many cases, the 'real dispute is between the injured third party and the insurance company, not between the injured and an often-times impecunious insured.'" *Green*, 825 F.2d at 1064 (quoting 6A Moore's Federal Practice ¶ 57.19, at 57–204 (1983)).

*Maryland Casualty* notwithstanding, the Doe Defendants argue here that "there is no controversy whatsoever" between them and Everest, in particular with respect to the question of whether Everest has a duty to defend Piraino and Music City Fencing. (Doc. No. 22, at 8.) They further argue that there is no evidence in the record that Piraino himself ever demanded coverage or that there is a dispute regarding Everest's duty to defend Piraino and Music City Fencing. The Doe Defendants insist that the Sixth Circuit's decision in *Safety Specialty Insurance Co.* effectively dictates a conclusion in this case that the court lacks subject matter jurisdiction. It also insists that this case is factually on all fours with *Firemen's Insurance Co. of Washington, D.C. v. Ace American Insurance*, 465 F. Supp. 3d 254, 261 (W.D.N.Y. 2020), *aff'd sub nom. Firemen's Ins. Co. of Washington, D.C. v. Story*, 858 F. App'x 20 (2d Cir. 2021), in which the court found that it did not have subject matter jurisdiction over a part of the dispute.

*Safety Specialty*, however, is clearly distinguishable. In that case, an insurance coverage dispute, there were two underlying class action lawsuits against several Michigan counties that had allegedly retained surplus proceeds from the tax-foreclosure sales of private property. 53 F.4th at 1018. Genesee County was named as a defendant in the two class actions, and it claimed coverage under two liability insurance policies issued by Safety Specialty (which Safety Specialty denied). Safety Specialty then brought the declaratory judgment action against Genesee County, also naming as defendants the two named class representatives in the underlying class actions, neither of whom actually resided in, or sought to recover damages from, Genesee County. Safety Specialty sought a declaration that it owed no duty to defend Genesee County or to indemnify it from subsequent damages in the class action lawsuits. The district court presiding over the declaratory judgment action granted the insurance company's motion for summary judgment on the issue of coverage for Genesee County in the underlying lawsuits, but it also granted the class

representatives' motions to dismiss the claims as to them, for lack of subject matter jurisdiction, on the basis that there was no case or controversy between them and Safety Specialty.

The Sixth Circuit affirmed. While acknowledging that, "[o]n its face, *Maryland Casualty* would seem to govern this case," it distinguished that case on the basis that, "unlike the insured party in *Maryland Casualty*, Genesee County is not the 'alleged tortfeasor' that supposedly injured" the class representatives. *Id.* at 1022–23. Rather, "[t]hat distinction belong[ed] to two nonparties" to the declaratory judgment action—the counties where the class representatives lived. *Id.* Thus, in this particular instance, the court concluded that "no real dispute exists—at least, for now—between Safety and [the class representatives]." *Id.* The court also found that whatever controversy might exist was not ripe, largely because of the attenuated nature of the link between the class representatives' possible ultimate success in the underlying class action lawsuits and the likelihood that Safety Specialty would be on the hook for any such judgment:

> As discussed above, to the extent that the duty to defend reflects immediate harm, it does not involve Fox and Puchlak [the class representatives]. Meanwhile, harm from Safety's duty to indemnify is less likely to occur. Fox and Puchlak must prevail in their lawsuits against Genesee County; Genesee County must be held liable to them for damages; and Genesee County must prove unwilling or unable to satisfy any judgment before Fox and Puchlak can ask Safety to indemnify them.

*Id.* at 1023–24.

In this case, the same attenuation is not present. The Doe Defendants have sued Piraino and Music City Fencing. Everest is currently providing a defense for these defendants under a reservation of rights, and there is a direct possibility that, if Piraino's acts fall within the scope of coverage provided by Music City Fencing, Everest could be responsible for payment of a judgment against them. Moreover, the likelihood of a judgment is much less remote in this case, since Piraino has already pleaded guilty to criminal charges against him involving the abuse of Jane Doe. *Safety Specialty*, therefore, does not control the outcome here. *Accord Travelers Com. Ins. Co. v. Jester*,

No. 5:22-CV-00040-KDB-DSC, 2023 WL 1466612, at *2 (W.D.N.C. Feb. 2, 2023) (denying a motion to reconsider its denial of the defendant's motion to dismiss based on *Safety Specialty*, noting that, in upholding the district court's decision, the Sixth Circuit acknowledged that it had previously allowed an insurer to bring a declaratory judgment action against both the insured and injured parties and "emphasized the unique facts of that case" to reach a contrary decision there).

The Doe Defendants argue that this case is distinguishable from *Maryland Casualty* and even *Safety Specialty* (insofar as the court there went on to determine the scope of coverage for Genesee County, even while dismissing for lack of jurisdiction the claims against the class representatives), because Piraino and Music City have never actually demanded coverage under the Everest policies for the actions alleged in the Underlying Lawsuit. The Doe Defendants argue that, in *Maryland Casualty*, the Supreme Court found that a "controversy" existed on the basis that the party injured in the underlying lawsuit sought a judgment against the insured "in an action which the latter claims is covered by the policy." *Md. Cas. Co.*, 312 U.S. at 273.

As Everest points out, however, nothing in *Maryland Casualty* suggests that a formal demand for coverage must be made by the insured or that the insurer must deny coverage before bringing a declaratory judgment action to determine the scope of its duties. In this case, Everest received notice of the lawsuit from USA Fencing and then notified Piraino and Music City Fencing that it would provide a defense subject to a reservation of rights. The facts that neither Piraino nor Music City Fencing made a formal demand for coverage, formally disputed Everest's contention that its policies did not provide coverage for the acts alleged in the Underlying Lawsuit, or even responded to the DJ Complaint in this case are not dispositive of the question of whether an actual controversy exists. Everest has been supplying a defense under a reservation of rights, so there was no need for Piraino to make a formal demand. At this point, Piraino and his shuttered business are

both likely judgment proof and without funds to procure a lawyer, so they had little incentive to respond to the DJ Complaint. It is simply not true that they are not seeking a defense—nor is it true that the Doe Defendants have no interest in how the dispute concerning Piraino's and Music City Fencing's coverage by the Everest policies is resolved.[4]

The Doe Defendants' reliance on *Firemen's Insurance Co.* is likewise misplaced. That case did not involve a simple coverage dispute between an insurance company as plaintiff, on the one hand, and the insured and the injured third party as defendants, on the other. Rather, the underlying lawsuit was brought by a mason, Holguin, who was injured working at a construction site for the construction of a Wegmans grocery store. As relevant here, he named as defendants Wegmans and Tom Story, the foreman on the construction project. Story's work was governed by a staffing agreement between Wegmans and Aerotek, Inc., which required Aerotek to maintain liability insurance naming Wegmans as an additional insured. Pursuant to that agreement, Aerotek obtained an excess general liability policy from Ace American Insurance Company ("Ace American"). Wegmans had a separate agreement with MP Masonry, pursuant to which MP Masonry provided masonry services for the construction project. Holguin was employed by MP Masonry. MP Masonry also agreed to obtain liability insurance for itself and Wegmans and to indemnify Wegmans from claims of personal injury to MP Masonry employees arising in connection with the project. MP Masonry obtained a policy from Firemen's Insurance.

---

[4] The Doe Defendants take issue with the fact that USA Fencing has not been named as a defendant in this case, arguing that its absence gives rise to a possible need for multiple rulings interpreting the Everest policies, which entails a risk of inconsistent rulings. The Doe Defendants do *not* argue, however, that USA Fencing is a necessary party in this case. And the presence or absence of USA Fencing has no bearing on whether the court has subject matter jurisdiction over the case as it is now configured.

In the parallel declaratory judgment action, Firemen's Insurance brought claims against Ace American and Aerotek; Ace American brought counterclaims against Firemen's Insurance, and Aerotek brought cross-claims against MP Masonry. Among many other issues raised in that case, Firemen's Insurance asked the court for a declaration that it had no duty to indemnify Story or contribute to his defense under the policy Firemen's issued to MP Masonry. *Firemen's Ins. Co.*, 465 F. Supp. 3d at 257–58.

On that question, Firemen's Insurance argued that Story did not qualify as an "insured" under the policy it issued to MP Masonry, and Aerotek argued that neither it nor Story himself had ever contested Firemen's Insurance's disclaimer of coverage for Story and, therefore, that there was no case or controversy for purposes of subject matter jurisdiction. Firemen's failed to "offer any opposing allegations that would suggest that Aerotek, Mr. Story, or any other party challenges Firemen's Insurance's disclaimer of coverage." *Id.* at 261. On that basis, the court agreed that, "because there [was] no actual dispute over the parties' legal rights and obligations [pertaining] to coverage for Mr. Story, there [was] no case or controversy." *Id.* The court dismissed the claim for lack of subject matter jurisdiction.

The case is clearly not similar to this dispute. There, the Firemen's policy was obtained by MP Masonry to provide coverage for itself and Wegmans, for injuries incurred by MP Masonry employees. Aerotek and Story were strangers to that arrangement, and neither of them claimed— or had any apparent basis for claiming—coverage under the Firemen's policy. The cases on which *Firemen's Insurance* relied to find that there was no case or controversy presented by Firemen's Insurance's claim involved similarly attenuated coverage questions. *See U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp.*, 321 F. Supp. 3d 313, 319–20 (E.D.N.Y. 2018) (holding that it had no subject matter jurisdiction in a declaratory judgment action brought by an insurer,

where "the complaint [did] not contain any allegation" that the particular defendants named in the declaratory judgment action claimed to be insureds in the underlying lawsuit); *United Fin. Cas. Co. v. Paddon*, 248 F. Supp. 3d 368, 373 (N.D.N.Y. 2017) (recognizing the existence of cases finding subject matter jurisdiction where the insurer brings a declaratory judgment action against an insured and an injured party, where an "underlying action was brought by the injured party against the insured," but no subject matter jurisdiction in the case before it, because the injured party in the underlying case had not initiated claims against the insurance company or any of its insureds).

The case now before this court presents the classic situation in which an insurer brings a declaratory judgment action against its insured (or putative insured) and the third parties claiming to have been injured by the insured. The court clearly has subject matter jurisdiction over this dispute. *Md. Cas. Co.*, 312 U.S. at 274.

The Doe Defendants also argue that the question of Everest's duty to *indemnify*, as distinct from its duty to defend, does not present a ripe dispute. In support of this claim, it cites *Medpace v. Darwin Select Insurance*, 13 F. Supp. 3d 839 (S.D. Ohio 2014). In that case, the court was presented with cross-motions for judgment on the pleadings. It ruled that the plaintiff insurer had a duty to defend the insured in the underlying action but, on the issue of whether it also had a duty to indemnify, stated only that that claim was "not yet ripe for determination," because there were disputed facts in the underlying case, such that the indemnification issue could not be resolved based solely on the allegations in the underlying complaint. *Id.* at 847. To be clear, the court did not dismiss the claim—it simply declined to issue a judgment on the pleadings as to that claim, based on Ohio law. *Id.* (citing *Chemstress Consultant Co. v. Cincinnati Ins. Co.*, 715 N.E.2d 208, 212 (Ohio Ct. App. 1998), as explaining that, because "[a]n insurer's duty to indemnify is separate

and distinct from its duty to defend," the lower court erred by deciding the issue of indemnification based solely on the allegations in the underlying complaint). In other words, the court in *Medpace* did not address a jurisdictional issue.

The Doe Defendants point to no other authority in support of their contention that the court should bifurcate the question of "coverage" raised in the DJ Complaint into separate "duty to defend" and "duty to indemnify" issues at this juncture. The court here is not presented with motions for judgment on the pleadings (or motions for summary judgment) but only the question of whether it has subject matter jurisdiction over the coverage question raised in the DJ Complaint. It clearly does. Whether it should *exercise* that jurisdiction is a wholly different question—a question on which the court expresses no opinion, as it has not been raised.

## IV. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge