# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **EVEREST NATIONAL INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Case No. 3:23-cv-00442** **Judge Aleta A. Trauger** |
| **ROBERT PIRAINO, MUSIC CITY FENCING CLUB, INC., JANE DOE, a minor, JOHN DOE, her father, AND JUDY DOE, her mother,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM

Before the court are cross-Motions for Summary Judgment (Doc. Nos. 70 (defendants'),
71 (plaintiff's). For the reasons set forth herein, the plaintiff's motion will be denied in its entirety,
and the defendants' motion will be granted in part and denied in part as moot.

## I.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment,
identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P.
56(a). "The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

By its very terms, Rule 56 anticipates "that the mere existence of some alleged factual
dispute between the parties will not defeat an otherwise properly supported motion for summary
judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine,
a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating

a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.* at 248.

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence" that the nonmoving party is entitled to a verdict. *Id.*

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Ferro Corp. v. Cookson Grp., PLC*, 585 F.3d 946, 949 (6th Cir. 2009); *Taft Broad. Co. v. United States*, 929 F.2d 240, 241 (6th Cir. 1991). On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft*, 929 F.2d at 248.

## II.      PROCEDURAL HISTORY

Plaintiff Everest National Insurance Company ("Everest") filed this action seeking declaratory relief in May 2023, naming as defendants Robert Piraino and Music City Fencing Club, Inc. ("Music City Fencing"), as potential insured parties under policies issued by Everest, and Jane Doe, John Doe, and Judy Doe (collectively referred to herein as "Jane Doe"), the anonymous plaintiffs in *Jane Doe, a minor, et al., v. Robert Piraino, et al.*, Case No. 3:22-cv-00560, a related lawsuit also pending in this court ("Underlying Lawsuit"). (*See* Doc. No. 1.) Following the filing of an amended pleading in the Underlying Lawsuit, which alleged a new negligence theory of liability against Piraino and Music City Fencing, Everest sought and was granted leave to file the Amended Complaint in this case in January 2025. (Doc. No. 61.) In short, Everest seeks a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that it is not obligated to provide a defense to Piraino or Music City Fencing in the Underlying Lawsuit or to indemnify them for any damages assessed against them in the Underlying Lawsuit.

Jane Doe and Everest now both seek summary judgment on the issue of Everest's obligation to defend or indemnify Piraino and Music City Fencing in the Underlying Lawsuit. Both parties have filed Memoranda in support of their respective motions, Statements of Undisputed Material Facts, Responses to the other party's motion, Responses to the Statements of Undisputed Facts, and Reply briefs in further support of their own motion.

Although they have been served, neither Piraino nor Music City Fencing has answered or otherwise defended itself in this lawsuit, and the Clerk has granted Everest's Motion for Entry of Default against them. (Doc. No. 74.)

## III.      FACTS

Although both parties purport to dispute some of the facts cited by the other, the facts in this case depend entirely upon the language and wording of the Second Amended Complaint

("SAC") filed in the Underlying Lawsuit and the written provisions of the applicable insurance policies, none of which can reasonably be disputed.

### A. The Allegations in the Underlying Lawsuit

Jane Doe filed suit in this court against Piraino and Music City Fencing, as well as the United States Fencing Association ("USA Fencing" or "USAF"), in July 2022. Complaint, *Doe v. Piraino*, Case No. 3:22-cv-00560 (M.D. Tenn. July 27, 2022), ECF No. 1. She filed the SAC in August 2024. SAC, *Doe v. Piraino*, Case No. 3:22-cv-00560 (M.D. Tenn. Aug. 13, 2024), ECF No. 115.

As alleged in the Underlying Lawsuit, Piraino is a former fencing coach and is the owner, principal, and former head coach of Music City Fencing. SAC ¶ 5. USAF is the national governing body for the sport of fencing in the United States. *Id.* ¶ 7. At all times relevant to the Underlying Lawsuit, Piraino was a USA Fencing member coach, and Music City Fencing was a USAF-approved premium member club. *Id.* ¶¶ 38, 40. Piraino was the sole owner, officer, and director of Music City Fencing and had complete control over the operations and management of Music City Fencing. *Id.* ¶¶ 41, 43.

Jane Doe began taking fencing lessons at Music City Fencing in July 2017, when she was 11 years old. *Id.* ¶ 90. Piraino began sexually grooming, exploiting, and abusing Jane Doe when she was 13, and this abuse continued until "sometime in early 2021." *Id.* ¶¶ 93–122.[1]

Although the primary focus of the Underlying Lawsuit is Piraino's sexual abuse of Jane Doe while he was her fencing coach, Jane Doe also alleges that Piraino caused permanent damage to her shoulder by making her perform painful shoulder exercises during fencing practice, even

---

[1] Piraino was arrested on August 9, 2021 in connection with his abuse of Jane Doe. SAC ¶ 133. He pleaded guilty on November 16, 2022 to multiple counts relating to his sexual abuse of Jane Doe and another minor and was sentenced to 25 years of incarceration. *Id.*

though he knew that she was experiencing shoulder pain. More specifically, Jane Doe alleges that Piraino made "demands" upon her, including that she send him videos of herself masturbating or "engaging in 'dirty talk'" and photos of herself in "sexually suggestive positions." *Id.* ¶¶ 103–07. When she complied with his demands, he rewarded her with gifts. *Id.* ¶ 112. However, when she did not comply, he punished her, as follows:

> 113. When Jane Doe did not comply with Piraino's demands, she was punished. If she refused to send a photo or video that Piraino requested, he would show up to the next fencing practice in a rage. Throughout practice, he would find pretextual reasons to single her out for harsh treatment and berate her in front of other students.

> 114. He would also physically punish her. Sometime during 2020, Jane Doe began experiencing pain in her shoulder during fencing activities. Piraino knew this and, during fencing practice, would make Jane Doe perform exercises to aggravate her shoulder, knowing that this caused her excruciating pain. Jane Doe believes that Piraino would do this in direct response to Jane Doe refusing one of his demands for photos and videos.

*Id.* ¶¶ 113–14. In the alternative, however, Jane Doe alleges that, "regardless of whether Piraino was intentionally punishing Jane Doe for refusing to provide photos and videos, he knew that Jane Doe's shoulder was injured, knew that she had been seeing health care providers for her injury, and nevertheless continued to make her perform painful exercises that aggravated the injury." *Id.* ¶ 114. In either event, that is, whether Piraino intentionally or negligently made her continue to perform exercises with an injured shoulder, Jane Doe has allegedly "suffered permanent injuries to her shoulder as a result of this treatment." *Id.* ¶ 116.

Based on these and other factual allegations relating to the sexual abuse and the organizational defendants' liability for Piraino's actions, the SAC sets forth numerous causes of action, including claims for (1) intentional infliction of emotional distress (against Piraino and Music City Fencing); (2) assault and battery (against Piraino and Music City Fencing); (3) negligence (against Piraino and Music City Fencing); (4) negligence and negligent supervision

(against USA Fencing and Music City Fencing); and (5) violation of various federal statutes defining and prohibiting sex trafficking, forced labor, and inducement of child pornography (against Piraino and Music City Fencing).

Specifically in support of Count 3, the negligence claim against Piraino and Music City fencing, Jane Doe asserts:

155. Plaintiffs repeat and reallege each and every allegation in this Complaint as if fully set forth herein.

156. The risk of a fencer being injured while participating in fencing training, practices, competitions, and other activities is obvious and was well-known to Piraino and Music City Fencing during the time when Jane Doe was a student at Music City Fencing and Piraino was her coach.

157. In light of the obvious and well-known risk of injury, Piraino and Music City Fencing had a duty to Jane Doe to use reasonable care in supervising her participation in fencing activities so that she would not be injured, including by teaching proper form and technique, monitoring for injuries, and avoiding overuse of joints and muscles.

158. In light of the obvious and well-known risk of injury, Piraino and Music City Fencing had a duty to Jane Doe to adopt, implement, and enforce reasonable policies and procedures to be followed in case a fencer was injured or was experiencing pain during fencing activities, including limiting or ceasing that fencer's participation in such activities in order to prevent further injury.

159. Piraino breached his duty to Jane Doe by failing to properly supervise her participation in fencing training and competition, resulting in an injury to her shoulder.

160. Piraino breached his duty to Jane Doe by causing her to perform exercises that aggravated her shoulder injury when he knew that her shoulder was injured and that the exercises were causing her pain.

161. Music City Fencing is vicariously liable for Piraino's actions because, while he was acting as Jane Doe's fencing coach, Piraino was Music City Fencing's agent, was acting in the course and scope of his employment as Music City Fencing's agent, and was acting for Music City Fencing's benefit.

162. Music City Fencing breached its duties to Jane Doe by failing to adopt, implement, and enforce reasonable policies and procedures to be followed when a fencer was injured, including ceasing or limiting that fencer's participation in fencing activities.

163. As a direct and proximate result of Piraino and Music City Fencing's breach of their duties to her, Jane Doe has suffered permanent injuries to her shoulder, which will require costly, ongoing treatment.

SAC ¶¶ 155–63.

### B. The Insurance Policies

USA Fencing is the named insured on four primary liability policies issued by Everest and covering the period from August 1, 2018 to August 1, 2022 (the "Primary Policies"). (*See* Doc. Nos. 61-4, 61-5, 61-6, 61-7.) Everest also issued four excess-liability policies (the "Excess Policies") covering USA Fencing for the same time period. (Doc. Nos. 61-8, 61-9, 61-10, 61-11.) The Declarations Page of each of the Primary Policies states that the Primary Policies were issued to USAF at its principal place of business in Colorado. (*See, e.g.*, Doc. No. 61-8 at 3.) Subject to their own terms and conditions, the Excess Policies follow the terms, conditions and exclusions that are contained in the "first underlying insurance" and do not provide coverage that is "broader than that provided by the 'first underlying insurance,'" meaning the Primary Policies. (*See, e.g.*, Doc. No. 61-8 at 16.)

The Primary Policies contain a "Named Insured Extension Endorsement (Broad Form)" that, under the Primary Policies' Declarations Pages, amends the Primary Policies to include USA Fencing members and member clubs as Named Insureds "with regard to losses arising from their organized, supervised club practices and fencing related activities and from their participation in USAF and/or Federation International[e] d'Escrime (FIE) sanctioned competitions." (*See, e.g.*, Doc. No. 61-4 at 164.)

The Primary Policies contain a Commercial General Liability ("CGL") Coverage Part that states in relevant part as follows:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

> b. This insurance applies to "bodily injury" and "property damage" only if:

>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

>> (2) The "bodily injury" or "property damage" occurs during the policy period; and

>> (3) Prior to the policy period, no insured . . . and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. . . .

(Doc. No. 61-4 at 94.)

The Primary Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 106.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 108.) The Policies do not define "accident."

The Primary Policies contain a Limited Abuse or Molestation Coverage (Sublimit) Endorsement ("Abuse Endorsement"). (*Id.* at 114.) The Abuse Endorsement modifies the "Exclusions" section for Bodily Injury and Property Damage Liability by expressly stating that "[t]his insurance does not apply to" the following:

1. "Bodily injury" [or] "property damage" . . . for which any insured may be held liable by reason of the actual, alleged or threatened abuse or molestation of any person by any person, persons or organizations; or

2. "Bodily injury" [or] "property damage" . . . for which any insured may be held liable by reason of:

    a. The employment of;

    b. Training of;

    c. The investigation of;

    d. The supervision of;

    e. The reporting or failure to report to the proper authorities of;

    f. The retention or reassignment of; or

    g. Any other alleged or actual relationship, contract, agreement or activity with any person, persons or organization:

        i. Accused or guilty of; or

        ii. Who had or should have had actual, implied or imputed knowledge of the actual, alleged or threatened abuse or molestation of any person.

(*Id.*)

Notwithstanding this exclusion, the Abuse Endorsement in the Primary Policies provides limited coverage for abuse and molestation claims, as follows:

**1. Insuring Agreement – Abuse Or Molestation Coverage**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "abuse or molestation injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "abuse or molestation injury" to which this insurance does not apply.

(*Id.*) "Damages arising out of acts, errors or omissions of an 'executive person' in connection with an 'abuse or molestation incident' . . . that take place after the 'executive person' becomes aware of the 'abuse or molestation incident'" are not covered by the Abuse Endorsement. (*Id.* at 115.)

"Abuse or molestation" is defined to include "[a]ctual, threatened or alleged" assault, battery, sexual abuse or molestation. (*Id.* at 116.) "Executive person" is defined to include a member corporation's executive officers, directors, and managerial employees. (*Id.* at 117.)

In addition, the Primary Policies contain an exclusion for "Expected Or Intended Injury." (*Id.* at 95.) Under this exclusion, the Primary Policies do not insure against "'[b]odily injury' . . . expected or intended from the standpoint of the insured." (*Id.*)

In a letter dated February 10, 2023, Everest advised Piraino and Music City Fencing that it would provide them a defense in the Underlying Lawsuit, "subject to a full and complete reservation of rights, including the right to seek declaratory relief . . . for the purpose of obtaining a ruling that Everest has no obligation to defend or indemnify [Piraino] and Music City in connection with the [Underlying] Lawsuit." (Doc. No. 61-2 at 2.)

## IV. DISCUSSION

The parties agree, at least for purposes of summary judgment, that the Policies were delivered to USA Fencing in Colorado and that, under Tennessee choice of law principles, Colorado law applies to this insurance dispute. (*See* Doc. No. 71-2 at 12; Doc. No. 70-1 at 13.) Nearly the entirety of Everest's Memorandum in support of its Motion for Summary Judgment is devoted to arguing that, under Colorado law, the Primary Policies (and therefore the Excess Policies) do not provide coverage to either Piraino or Music City Fencing for Piraino's intentional sexual abuse and molestation of Jane Doe. (*See generally* Doc. No. 71-2 at 14–22.) In response to Everest's Motion for Summary Judgment, Jane Doe does not dispute this proposition and, in fact, acknowledges that it is likely that "Piraino and Music City Fencing Club are not covered for Piraino's intentional sexual abuse of Jane Doe." (Doc. No. 73 at 1.)

Jane Doe's position in her own Motion for Summary Judgment—and the apparent impetus for adding a negligence claim against Piraino and Music City Fencing in the SAC—is that the

Policies *do* provide coverage for acts of ordinary negligence giving rise to bodily injury and that she adequately alleges in the SAC that Piraino is "liable in negligence because he made her perform [shoulder] exercises when he knew or should have known that he was placing her at risk of further injury." (Doc. No. 73 at 2; *see id.* ("Indeed, [this injury] is the paradigmatic occurrence that the Policies were issued to cover—a USA Fencing member being injured in practice or competition due to another member's failure to follow an ordinary standard of care."); *see also* Doc. No. 70-1 at 5 ("In her most recent amended pleading in that lawsuit, Jane Doe alleges that Piraino caused permanent damage to her shoulder by making her perform painful exercises in fencing practice, and asserts a claim for negligence against Piraino and Music City Fencing based on this injury.").) She argues that

> [her] shoulder injury reflects the core risk that Everest insured when it issued the policy—that is, the risk that an athlete might be injured in training or competition, and that a USA Fencing member's negligence might be the cause of that injury. Jane Doe alleges that she was injured in fencing practice, while performing exercises under her coach's direct supervision, and that his actions were negligent, *i.e.* that he did not intend to injure her. There is no plausible interpretation of the policy that would exclude coverage.

(Doc. No. 70-1 at 5–6.)

### A. Applicable Legal Principles

Under Colorado law, courts "construe an insurance policy's terms according to principles of contract interpretation," which requires that "[t]he words of the contract . . . be given their plain meaning according to common usage." *N.H. Ins. v. TSG Ski & Golf*, 128 F.4th 1337, 1345 (10th Cir. 2025) (quoting *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004), and *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)).

Whether an insurance company has an affirmative duty to defend its insured against affirmative claims is "determined by application of the 'complaint rule.'" *Id.* (quoting *Cyprus Amax Min. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003)). To apply this rule, "courts

compare the factual allegations in the underlying complaint to the terms of the insurance policy. When the complaint 'alleges any facts that might fall within the coverage of the policy,' the duty to defend arises." *Id.* (quoting *Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network*, 17 F.4th 22, 30 (10th Cir. 2021) ("To defeat a duty to defend, an insurer must establish that there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.")

The defendants, as insureds, bear the initial burden of proving that the Underlying Lawsuit falls within the scope of the Everest Policies. *See Rodriguez ex rel. Rodriguez v. Safeco Ins. Co. of Am.*, 821 P. 2d 849, 853 (Colo. Ct. App. 1991). If they meet that burden, Everest, as insurer, bears the burden of proving that any exclusions apply. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P. 3d 814, 829 (Colo. 2004).

An insurer incurs no duty to defend if "an exclusion in the insurance policy precludes coverage." *N.H. Ins.*, 128 F.4th at 1345 (quoting *Thompson*, 84 P.3d at 502). To avoid a duty to defend, the insurer has the burden of showing that "'the allegations in the complaint are solely and entirely within the exclusions in the insurance policy'; that is, 'that there is no factual or legal basis' on which the insurer might eventually owe coverage." *Id.* (quoting *Cotter Corp.*, 90 P.3d at 829). To establish that a particular exclusion actually applies in the particular case, the insurer must show that "the exclusions are not subject to any other reasonable interpretations." *Id.* (quoting *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999)); *see also Chavez v. Arizona Auto. Ins. Co.*, 947 F.3d 642, 646 (10th Cir. 2020) ("[W]hen the underlying complaint alleges *any* facts or claims that might fall within the ambit of the policy, the insurer must tender a defense." (quoting *Cyprus Amax*, 74 P.3d at 301). Thus, "[a]n insurer has a duty to defend where a complaint against its insured 'alleges any facts that might fall within the coverage of the policy,' even if

allegations only 'potentially or arguably' fall within the policy's coverage." *Thompson*, 84 P.3d at 502 (quoting *Hecla*, 811 P.2d at 1089).

Generally, "[t]he facts alleged in the underlying complaint, not the legal claims asserted by the plaintiff, determine the insurer's duty to defend." *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 921 (10th Cir. 2008) (citing *Gerrity Co. v. CIGNA Property & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. Ct. App. 1993)). Thus, "conclusory allegations of negligence are inadequate to trigger the duty to defend" when the alleged injuries arise from obviously intentional acts. *Cole v. State Farm Fire & Cas. Co.*, 25 F. App'x 791, 797 (10th Cir. 2002) (applying Colorado law).

A duty to *indemnify* arises "only when the policy actually covers the harm and typically cannot be determined until the resolution of the underlying claims." *Cyprus Amax*, 74 P.3d at 301 (citing *Hecla*, 811 P.2d at 1086). That is, "indemnity flows from the nature of the ultimate verdict, judgment or settlement," so "the trigger for the duty to indemnify must normally await a determination of actual liability." *Id.*

## B. Everest's Duty to Defend

Jane Doe argues in this case that she has asserted a negligence claim against Piraino and Music City Fencing and that this negligence claim triggers Everest's duty to defend, even though the primary focus of the Underlying Lawsuit is "Piraino's yearslong campaign of sexual assault and abuse." (Doc. No. 70-1 at 6.)

Everest raises several arguments in response. First, it asserts that Jane Does fails to show that Piraino and Music City Fencing qualify as insureds under the Policies. Under the Primary Policies' Named Insured Extension Endorsement, insured status is conferred on USAF members and member clubs for losses "arising from their organized, supervised club practices and fencing related activities and from their participation in USAF and/or Federation International[e]

d'Escrime (FIE) sanctioned competitions." (Doc. No. 61-4 at 164.) Focusing on allegations of sexual grooming and abusive behavior, Everest argues that the SAC does not allege that Jane Doe sustained injuries "as a result of Piraino's misconduct [that] might be attributable to 'organized, supervised club practices, and fencing related activities.'" (Doc. No. 72 at 10.)

The court is not persuaded by this initial argument, insofar as the SAC alleges that Piraino, "during fencing practice, would make Jane Doe perform exercises to aggravate her shoulder." (SAC ¶ 114.) It also asserts that "Piraino breached his duty to Jane Doe by failing to properly supervise her participation in fencing training and competition, resulting in an injury to her shoulder." (*Id.* ¶ 159.) The SAC, that is, at least arguably asserts injury caused by Piraino and Music City Fencing arising from organized, supervised club practices.

Second, Everest argues that coverage under the Policies is not triggered because Jane Doe's injury does not result from an "occurrence" as defined by the Primary Policies. (Doc. No. 72 at 12.) As set forth above, the Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. No. 61-4 at 108.) The Policies do not define "accident," but Colorado courts define it, in this context, as the "unanticipated or unusual result flowing from a commonplace cause." *5333 Mattress King v. Hanover Ins. Co.*, 683 F. Supp. 3d 1188, 1200 (D. Colo. 2023). Setting aside Everest's argument that Piraino's conduct was intentional, which potentially triggers a separate policy exclusion and is addressed below, it seems clear that a fencing injury caused by repetitive exercise would, as a general matter, qualify as an "occurrence." Thus, as the plaintiff argues, if Piraino was *not* punishing Jane Doe for refusing to comply with his sexual demands and did *not* intend to injure her but nonetheless made her repeatedly perform exercises that injured her shoulder simply because his coaching methods were negligent, then this type of overuse injury would "plainly"

qualify as an "occurrence" triggering Everest's duty to defend. (Doc. No. 76 at 1–2.) And, as set forth above, the standard is whether the SAC "alleges *any* facts that *might* trigger coverage, even if only *potentially* or *arguably*," and Jane Doe contends that it does. (*Id.* at 2 (citing *Travelers v. Luna Gourmet Coffee & Tea*, 533 F. Supp. 3d 1013, 1022 (D. Colo. 2021)).)

Everest's third argument is that, "where an intentional tort, such as sexual abuse, is the 'factual predicate' for a complaint against an insured, a conclusory negligence claim based on the same facts does not trigger a duty to defend." (*Id.*) More specifically, Everest asserts that

> Piraino's alleged act of repeatedly making Jane Doe perform exercises that he knew would aggravate her shoulder and cause "excruciating pain" is also expressly pled in support of claims for assault and battery of a minor, violation of the Trafficking Victims Protection Act, and intentional infliction of emotional distress—all of which are based on Piraino's alleged sexual abuse of Jane Doe.

(*Id.* at 13–14 (citing SAC ¶¶ 113–15, 137, 144, 206, 218).) Everest argues that, when the allegations about Jane Doe's shoulder injury are construed together with the SAC's other allegations, it becomes clear that "Piraino's alleged use of the shoulder exercises against Jane Doe is [simply] 'another link in the chain' of intentional acts for which the [Underlying] Lawsuit seeks to impose liability on Piraino and Music City." (*Id.* at 14.)

In the cases cited by Everest in support of this argument, courts typically found that "conclusory allegations of negligence" did not trigger a duty to defend, because the insured party's criminal or intentional acts formed "the factual predicate" of *all* of the claims in the underlying lawsuit, including the negligence claim. *Cole*, 25 F. App'x 797 (applying Colorado law); *see also Hecht v. Great N. Ins. Co.*, No. 17-cv-02364, 2018 WL 10320592 at *4 (D. Colo. April 18, 2018) (where the insured sought to enforce a duty to defend against a lawsuit asserting a claim based on the insured's forcing his former significant other to have an abortion, holding that the allegedly negligent selection of an abortion provider was simply a "link in the chain of otherwise intentional actions"); *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 84 (Colo. Ct. App. 1997) (despite

conclusory assertions of negligence in the complaint in the underlying litigation, holding that, where that complaint specifically alleged that the insured had committed a series of sexual assaults, "either the intentional act exclusion or the criminal act exclusion so clearly exclude[d] the type of damages alleged in the Does' federal court complaint that it may be said, as a matter of law, that [the insurer] had no duty to defend" the insured in the underlying litigation); *see also Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 666 S.E.2d 897, 900 (S.C. 2008) (holding that, when a claim for negligence incorporates the same facts underlying intentional tort claims alleging intentional conduct, there is no duty to defend).

In this case, as set forth above, Jane Doe indeed alleges that Piraino "physically punish[ed]" her for not acquiescing to his demands by "mak[ing] [her] perform exercises to aggravate her shoulder, knowing that this caused her excruciating pain." (SAC ¶ 114.) She incorporates this allegation of intentional conduct into several of her claims for relief based on intentional conduct. (*See id.* ¶¶ 137, 144, 206, 218.) However, she also alleges in the alternative that, irrespective of whether Piraino made her perform exercises because she had rebuffed his demands—in other words, even if that was *not* his intent—Piraino "knew that Jane Doe's shoulder was injured, knew that she had been seeing health care providers for her injury, and nevertheless continued to make her perform painful exercises that aggravated the injury." (*Id.*) Even knowing that she was seeing health care providers about her shoulder, Piraino "continued to maker her perform these painful exercises over and over again." (*Id.* ¶ 115.)

Under the heading of "Count 3 – Negligence," Jane Doe incorporates by reference the preceding factual allegations, and she asserts that, in making her perform exercises that aggravated her shoulder injury, Piraino "breached his duty" to "use reasonable care in supervising her participation in fencing activities so that she would not be injured" and breached his duty to "adopt,

implement, and enforce reasonable policies and procedures to be followed in a case when a fencer was injured or experiencing pain during fencing activities, including limiting or ceasing that fencer's participation in such activities in order to prevent further injury." (*Id.* ¶ 155, 157–60.)

Here, that is, the SAC does not rely on the exact same facts used to support the plaintiff's intentional tort claims to support the negligence claim. Instead, Jane Doe pleads facts in the alternative: *either* Piraino intentionally punished her by making her perform exercises he knew would cause pain and exacerbate an existing injury, *or* he did not intend to cause pain and exacerbate her injury but, instead, negligently pushed her to continue to perform exercises despite knowledge of the existing injury. In this situation, it is at least plausible that Piraino would maintain at trial—and that a jury would believe—that he did not intend to punish Jane Doe by making her continue to do exercises that exacerbated her injury and instead acted negligently. Under Colorado law, a duty to defend exists "when a complaint includes any allegations that, 'if sustained, would impose a liability covered by the policy.'" *Cotter Corp.*, 90 P.3d at 827 (quoting *Hecla*, 811 P.2d at 1089). Any doubt about "whether a theory of recovery within the policy coverage has been pleaded" must be resolved in favor of the insured. *Nat'l Union*, 17 F.4th at 30 (*quoting* Hecla, 811 P.2d at 1089).

Applying the complaint rule, the court finds that, even though the shoulder injury occurred during the same time period when Piraino was grooming Jane Doe for sexual activity and engaging in other forms of sexual abuse, Piraino's allegedly negligent conduct in the course of training Jane Doe, in his capacity as fencing coach, is not so "inseparably intertwined" with the sexual misconduct allegations that the negligence claim is necessarily barred. *Cole*, 25 F. App'x at 797; *accord Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 797 (Cal. 1993), *as modified on denial of reh'g* (May 13, 1993) ("Neither precedent nor logic dictates that a molester cannot also be liable

for torts of negligence against the victim which are apart from, and not integral to, the molestation.").

For the same reason, Everest's invocation of the Expected or Intended Injury Exclusion must also be rejected. The SAC does not only allege that Piraino forced Jane Doe to perform exercises he knew would aggravate an existing injury and cause her "excruciating" pain; it also alleges that, even if he did not intend to aggravate the existing injury and cause excruciating pain ("regardless of whether Piraino was intentionally punishing Jane Doe"), he engaged in negligent coaching practices by making her continue exercising her shoulder despite knowledge of a preexisting injury. (SAC ¶¶ 114, 157–60.)

Everest is correct, of course, that the SAC does not, on its face, present a "run-of-the-mill youth sports injury" (Doc. No. 72 at 18), and the belated assertion of a negligent-coaching claim in the Underlying Lawsuit was somewhat obviously intended to bring the Underlying Lawsuit within the scope of coverage provided by Everest's Policies. Regardless, the SAC now plausibly alleges that Jane Doe was "injured during fencing practice, while performing exercises under her coach's direct supervision, and that his actions were negligent, *i.e.* that he did not intend to injure her." (Doc. No. 70-1 at 5–6.) Everest's Primary Policies clearly provide coverage for this type of claim, and the court is bound by the complaint rule to conclude that the negligence claim in the Underlying Lawsuit gives rise as a matter of law to Everest's duty to defend Piraino and Music City Fencing against all claims in the underlying lawsuit. *See Hecht*, 2018 WL 10320592 at *4 ("A complaint need only have asserted a single covered claim against Plaintiff to have triggered Defendant's duty to defend against all claims."). The court will grant Jane Doe's Motion for Summary Judgment, insofar as it seeks judgment on the question of whether Everest has a duty to defend, and deny Everest's motion, insofar as it seeks judgment in its favor on the same issue.

### C.       Everest's Duty to Indemnify

Jane Doe's Motion for Summary Judgment also asks the court to hold that the question of Everest's duty to indemnify is not ripe—which is an odd way to frame a motion for summary judgment. (Doc. No. 70 at 1.) In reality, Jane Doe is asking the court *not* to reach a judgment.[2] For its part, Everest seeks a declaration that it has no duty to defend *or* indemnify, and its summary judgment motion seeks a judgment in its favor as to both. (*See* Doc. No. 71-2 at 23 ("Here, a ruling that Everest has no duty to defend also disposes of the question of whether there is a duty to indemnify Piraino or Music City . . . .").)

As set forth above, the duty to defend is broader than the duty to indemnify, and the duty to indemnify "typically cannot be determined until the resolution of the underlying claims." *Cyprus Amax*, 74 P.3d at 301 (citing *Hecla*, 811 P.2d at 1086). Moreover, the only argument Everest makes in support of that part of its motion seeking a declaration that it has no duty to indemnify is that it has no duty to defend. Having found that Everest has a duty to defend, the court will deny summary judgment to Everest on this question as well, which moots the second part of Jane Doe's motion.

### V.       CONCLUSION

For the reasons set forth herein, Everest's Motion for Summary Judgment (Doc. No. 71) will be denied in its entirety, and the Doe defendants' Motion for Summary Judgment (Doc. No. 70) will be granted in part, insofar as she seeks judgment in her favor on the question of whether

---

[2] To be clear, Jane Doe does not seek summary judgment on whether Everest has a duty to indemnify. The court declines to grant a motion for summary judgment that seeks a ruling that judgment should not be entered.

Everest has a duty to defend Piraino and Music City Fencing in the Underlying Lawsuit. The remainder of the plaintiff's motion will be denied as moot.

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge